UNITED STATES of America,
Plaintiff-Appellee,

v.

George AURIEMMA,
Defendant-Appellant.

No. 85–5742
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Sept. 26, 1985.

Rehearing and Rehearing En Banc
Denied Oct. 21, 1985.

Alvin E. Entin, Entin, Schwartz, Dion, Sclafani & Cullen, North Miami Beach, Fla., for defendant-appellant.

Leon B. Kellner, U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before FAY, JOHNSON and CLARK, Circuit Judges.

PER CURIAM:

This is an appeal in which appellant asks us to interpret a subsection of a recently passed statute, 18 U.S.C. § 3142(c),[1] and the relationship of Administrative Order 85–19 issued by the United States District Court for the Southern District of Florida to that statute. Administrative Order 85–19, entitled POLICY STATEMENT REGARDING PROPERTY BONDS TO SECURE APPEARANCE OF DEFENDANTS, was issued on July 19, 1985.[2] That

---

1. (c) Release on conditions.—If the judicial officer determines that the release described in subsection (b) will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, he shall order the pretrial release of the person—

 \* \* \* \* \* \*

 (2) subject to the least restrictive further condition, or combination of conditions, that he determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include the condition that the person—

 \* \* \* \* \* \*

 (K) execute an agreement to forfeit upon failing to appear as required, such designated property, including money, as is reasonably necessary to assure the appearance of the person as required, and post with the court such indicia of ownership of the property or such percentage of the money as the judicial officer may specify;

 \* \* \* \* \* \*

The judicial officer may not impose a financial condition that results in the pretrial detention of the person. . . .

2. The complete text of the order is attached as an appendix.

Order set forth the policy statement that "the practice of routinely securing bonds in criminal cases by real or chattel mortgages is to cease immediately." The court did not completely rule out "the possibility of such a bond condition," noting that "under very extraordinary circumstances such a condition might be appropriate."

 We find it unnecessary to decide whether the challenged Administrative Order is valid or invalid. The Magistrate held a lengthy hearing, considered all of the factors involved and determined that a bond or security in the amount of $1,000,-000 was necessary to ensure the defendant's appearance in court. A review of the material presented reflects that the defendant has not tendered interests in collateral anywhere near such a sum. Many of the alleged values are extremely questionable on their face; but accepting the allegations of value, the collateral is woefully deficient. Considering the evidence presented, including the amount of cocaine seized and the circumstances surrounding the seizure, we find the $1,000,000 figure is reasonable. Consequently, we pretermit reaching the issue of the validity of the district court's Administrative Order.

AFFIRMED.

## APPENDIX

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF FLORIDA

### ADMINISTRATIVE ORDER 85–19

IN RE: POLICY STATEMENT REGARDING PROPERTY BONDS TO SECURE APPEARANCE OF DEFENDANTS

This Court is presently processing almost 3,000 defendants in criminal cases each year. Many of these persons are released on bonds secured by mortgages on real property. Some have been released upon signing bonds secured by chattel mortgages. These bonds have generated voluminous paperwork and record keeping far beyond the capacity of our already overburdened Clerk's staff. The Clerk has had to request additional personnel solely to process these bonds. Moreover, despite all efforts to ensure that proper collateral is posted, efforts to foreclose on these mortgages have been largely futile because of errors, discrepancies, and documentary defects. The problem is particularly egregious in a district such as this, where there are presently approximately 2,000 outstanding fugitive warrants.

The recent effort to make legally binding the local practice, by use of the form captioned "Promissory Agreement and Indenture Executed in Support of the Appearance Bond of Defendant" has not helped to resolve the procedural difficulties created by such bonds.

In short, the practice of releasing defendants on bonds secured by real or personal property has proved only to hinder and not expedite the administration of justice in this district.

The Court is mindful that the Bail Act provides at 18 U.S.C. § 3142(c)(2)(K) that the forfeiture of collateral is one condition which may lawfully be imposed in connection with release of a defendant upon bond. It is solely for this reason that the Court has not foreclosed the possibility of such a bond condition by local rule. It may be that under very extraordinary circumstances such a condition might be appropriate.

It is the policy of this Court, however, that the practice of routinely securing bonds in criminal cases by real or chattel mortgages is to cease immediately. Many acceptable alternative bond conditions are provided in the statute. Moreover, persons with genuine and substantial real property assets may obtain a private mortgage and use the proceeds to post either a corporate surety or cash bond.

DONE and ORDERED in chambers at the United States Courthouse, Federal Courthouse Square, Miami, Florida, this 19th day of July, 1985.

FOR THE COURT:
JAMES LAWRENCE KING
CHIEF U.S. DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

CLARK, Circuit Judge, concurring in part and dissenting in part:

With due respect to my colleagues, I suggest that the appellant has squarely presented us for decision the question of the validity of the Administrative Order. I concur in the majority finding that at this stage of the proceeding the appellant has not provided sufficient collateral to meet the property bond portion of the $1,000,000 bond. I dissent from the holding that this is a prerequisite to an appeal from the Magistrate's July 30, 1985 order, which I construe to be a final appealable order under 18 U.S.C. § 3145(c). The Magistrate concluded that the Administrative Order prevented appellant from furnishing a property bond and brought finality to the order with respect to appellant's rights under § 3142(c).

A pretrial detainee may file a motion for reduction of bond, which appellant did here. Appellant by motion dated July 24, 1985 requested such a reduction of the $1,000,-000 corporate surety bond and "presented a package of mortgages and promissory notes totaling approximately Seven Hundred Thousand ($700,000.00) Dollars." Order of the United States Magistrate, dated July 30, 1985, at 8. While our review does indicate that appellant has not actually tendered properly valued property as collateral in that amount, we have no reason to believe that he cannot do so. Obviously, if he cannot post the property, he cannot secure his release. Normally, a detainee would seek an order approving a bond in an amount and upon terms as advantageous to him as possible and, after getting the order, come forth with the collateral, if he could secure it. Thus, I disagree with the panel and believe that the majority places too high a preliminary requirement upon appellant, who was faced with the Administrative Order previously mentioned. On its face the order would indicate that even if appellant had the appropriately valued collateral, he still could not obtain his release, and the Magistrate and district court have

so ruled. For the reasons stated below I am of the opinion that the Administrative Order conflicts with 18 U.S.C. § 3142(c).

## FACTS AND PROCEEDINGS BELOW

On July 11, 1985, George Auriemma appeared before a United States Magistrate in the Southern District of Florida, having been arrested and charged with importation of 800 pounds of cocaine,[3] conspiracy to import 800 pounds of cocaine,[4] possession with intent to distribute cocaine on board a United States vessel,[5] and conspiracy to possess cocaine on board a United States vessel.[6]

Auriemma and his co-defendant were arrested after having been observed by the United States Coast Guard in United States waters on a Wellcraft motor vessel. Officers of the Coast Guard observed three individuals on the vessel throwing duffel bags into the ocean. The Coast Guard gave descriptions of the individuals to local police. When the vessel came to shore and the individuals aboard ran into the woods, Auriemma and his co-defendant were apprehended by the police. The third individual escaped. The 14 duffel bags thrown overboard were recovered by the Coast Guard and found to contain 800 pounds of cocaine. The Wellcraft was registered to Auriemma's wife's corporation.

At the first bond hearing and initial appearance, the court obtained the following information from Auriemma: he had lived at his present address in Miami Beach for one year; he had lived in Florida for 27 years with his wife and four children; he was self-employed as a mechanic and earned approximately $30,000 in 1984; he owned no property except for one fully paid for Cadillac and the Wellcraft vessel (now being forfeited by the government) for which one week before the alleged crime he paid $72,000; and he had been out of the United States two or three times to Bimini during the past three years.

3. 21 U.S.C. § 952.

4. 21 U.S.C. § 953.

5. 21 U.S.C. § 955a.

6. 21 U.S.C. § 955c.

At the conclusion of this first bond hearing, the Magistrate found that:

... [i]n light of the defendant's lack of property, steady employment, family with property in Florida, and in light of the nature of the charges, amount of controlled substances found and extent of the penalties facing the defendant, the bond requested by the Government of $1,000,000 corporate surety was not an unreasonable bond. The Court then advised Mr. Auriemma that he could have a second bond reduction hearing later when he had had time to consolidate his position and determine whether he had any other assets available to him which could be pledged for his bond.

Magistrate's Order at 3. The reference in the last sentence of this quotation is to a July 17, 1985 hearing which predates Administrative Order 85–19.

On July 17, 1985, this bond reduction hearing was held, and the attorney for Auriemma informed the court that the only other property available to collateralize a corporate surety bond was one small piece of land.

On July 24, 1985, Auriemma filed a second motion for reduction of bond and represented that he was prepared to post a $700,000 personal surety bond secured by mortgages and promissory notes on five pieces of property having that equity value. After holding a hearing on the matter, "the court again stated that it felt the bond was reasonable under the circumstances and, especially in light of Administrative Order 85–19, it would reduce the bond no further." Magistrate's Order at 6. At this point, Auriemma's attorney asked the court, for the record, whether it would have considered an alternative bond had Administrative Order 85–19 not been in effect.

The Court responded that it felt that a bond which would both secure the defendant's appearance in court and which would permit the defendant to be released would have been one approaching $100,000 corporate surety and a fully secured $750,000 personal surety bond secured by property in such a way that, should Mr. Auriemma's bond be revoked, it immediately would fall to the Government without time consuming litigation needed by the Government.

The Court hereby finds that such a property bond, in conjunction with a large corporate surety bond, would not be unreasonable under the circumstances, but it also finds that whether the defendant's ultimate bond is personally secured by property or by corporate surety, the bond must remain at or near the $1,000,000 level to guarantee the defendant's appearance.

The Court has struggled with this bond in light of the fact that the first meaningful request for a bond collateralized by property did not come until three days after the entry of Administrative Order 85–19. Although this Court does not interpret the Administrative Order to deny it absolutely the ability to impose a bond secured by property, it is clear from the Administrative Order that such a bond should be granted only under very extraordinary circumstances. In the instant case, the Court ... hereby finds as follows:

1. The bond of $1,000,000 corporate surety is an appropriate bond in that this amount is necessary to secure the defendant's appearance before the Court or, alternatively, the defendant should be held in pre-trial detention.

2. Although a personal surety bond of $750,000 collateralized by property in conjunction with a $100,000 to $250,000 corporate surety bond and other strict reporting conditions also would serve to guarantee [sic] the defendant's appearance before the Court, the Court does not find that the overall circumstances in this case are so extraordinary that imposition of this kind of bond is appropriate under the policy statements of Administrative Order 85–19.

It is, therefore,

ORDERED that the bond previously set at $1,000,000 corporate surety is retained, ....

Magistrate's Order at 6–8.

By order of September 13, 1985, the district court affirmed and adopted the order

of the Magistrate. Auriemma appeals from this release order as provided for in 18 U.S.C. § 3145(c). We have jurisdiction under 28 U.S.C. § 1291.

### DISCUSSION

The law governing bail hearings such as those of Mr. Auriemma is the Bail Reform Section of the Comprehensive Crime Control Act of 1984, which section was enacted to replace the Bail Reform Act of 1966. Under 18 U.S.C. § 3142(b), a defendant awaiting trial shall be released on personal recognizance or unsecured personal bond unless the judicial officer determines "that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." Under subsection (c), if the judicial officer determines that a personal recognizance or unsecured appearance bond will not reasonably assure appearance at trial, or will not ensure the safety of the community or certain persons in the community, the magistrate shall order the pre-trial release of the accused subject to a number of conditions set forth in subsection (c). One of these is paragraph (K) which concerns this case. In setting the conditions as provided for in subsection (c), the judicial officer "may not impose a financial condition that results in the pre-trial detention of the person." *Id.* Subsections (b) and (c) just discussed are taken from former 18 U.S.C. § 3146 with additional conditions having been included by Congress in subsection (c) of the 1984 Act. Completely new in the statute are subsections (e) and (f) which contemplate that some persons may pose such a threat to the community or certain individuals, or are so likely to flee prior to trial, that no set of conditions, including an extremely high bond, would be sufficient.[7] Before an accused may be detained without an opportunity to comply with obtaining a release under section (b) or (c), the judicial officer must hold a detention hearing pursuant to section (f) and afford the accused a due process hearing described therein. Congress made clear in the statute and in the congressional history that if a person is to be detained without bond, he is entitled to the due process detention hearing. Further, the judicial officer is forbidden from setting a bond so high that such bond alone would require detention since in such case an accused would be detained without the due process hearing.

The changes wrought by the 1984 Act reflect the Congress' "determination that Federal bail laws must address the alarming problem of crimes committed by persons on release and must give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released."[8] The Congress

> determined that danger to the community is as valid a consideration in the pre-trial release decision as is the presently permitted consideration of risk of flight. Thus, [the 1984 Act] places the consideration of defendant dangerousness on an equal footing with the consideration of appearance.[9]

As this court has noted with regard to both the Bail Reform Act of 1966 and the Bail Reform Act of 1984 which superseded it, "[t]he policy of both acts is to permit release under the least restrictive condition compatible with assuring the future appearance of the defendant." *United States v. Price,* 773 F.2d 1526 (1985).

For further explanation of that portion of the statute relied upon by Mr. Auriemma here, 18 U.S.C. § 3142(c)(2)(K), we quote from the legislative history of the Bail Reform Act of 1984:

---

7. Ten-day detention for the benefit of other authorities is authorized if a person is arrested while on pre-trial release, probation, or parole, or is an alien not admitted for permanent residence, *and* the judicial officer finds he "may flee or pose a danger to any other person or the community." 18 U.S.C. § 3142(d). This section is also new.

8. S.Rep. No. 225, 98th Cong.2d Sess., at 3, *reprinted in* 1984 U.S.Code Cong. & Ad.News, pp. 3182, 3185.

9. *Id.* at 12.

[redacted]

Subsection (c) provides that if the judicial officer determines that release on personal recognizance or unsecured appearance bond will not reasonably assure the appearance of the person or will endanger the safety of any other person or the community, the person may be released subject to the mandatory condition that he not commit an offense while on release, and subject to the least restrictive condition, or combination of conditions, set out in subsection (c)(2) that will provide such assurance. Except for financial conditions that can be utilized only to assure appearance, any of the discretionary conditions listed in subsection (c)(2) may be imposed either to assure appearance or to assure community safety.

Current 18 U.S.C. 3146 sets forth five specific conditions, including a catch-all permitting imposition of "any other condition deemed reasonably necessary to assure appearance as required." The Committee has determined to maintain these five conditions with only minor modifications, and to increase the number of explicitly stated conditions by adding nine more. Although each of the additional conditions could appropriately be imposed today under the catch-all in current law, spelling them out in detail is intended to encourage the courts to utilize them in appropriate circumstances....

It must be emphasized that all conditions are not appropriate to every defendant and that the Committee does not intend that any of these conditions be imposed on all defendants, except for the mandatory condition set out in subsection (c)(1). The Committee intends that the judicial officer weigh each of the discretionary conditions separately with reference to the characteristics and circumstances of the defendant before him and to the offense charged, and with specific reference to the factors set forth in subsection (g).

* * * * * *

The condition in subparagraph (K), although similar to the ten percent appearance bond condition set out in the current 18 U.S.C. 3146(a)(3), is *designed to provide greater flexibility to the court in setting financial conditions of release.* The concept of an appearance bond is retained, but the court has the discretion to determine what percentage of the amount of the bond is to be posted with the court. Where there is a substantial risk of flight, the judicial officer may require the posting of the entire amount. *As an alternative to the posting of money, the court may require the execution of an agreement to forfeit designated property. When this alternative is employed the indicia of ownership of the property, such as the title to a car or the deed to real property, is to be posted with the court. A party other than the defendant may post money or execute an agreement to forfeit designated property under this paragraph, but in such a case the judicial officer would first ascertain whether the prospect of forfeiture by the third party would be sufficient to assure the appearance of the defendant. Generally such assurance will exist where there is a close relationship between the defendant and the third party, such as a family tie.*[10] (Emphasis added).

The policy announced by Administrative Order 85–19 against property bonds clearly runs counter to the intent of Congress in passing this legislation. As the above-quoted legislative history indicates, Congress intended, in enacting 18 U.S.C. § 3142(c)(2)(K), "to provide greater flexibility to the court in setting financial conditions of release." [11] As part of this greater flexibility, Congress specifically provided for the execution of property bonds. The enactment of a policy against property bonds in Administrative Order 85–19 provides lesser, not greater, flexibility to the court in setting financial conditions of release and specifically restricts the use of a

10. *Id.* at 13–15 (emphasis added) (footnote omitted).

11. *Id.* at 15.

condition which Congress provided for, *i.e.*, property bonds.

The clear meaning of the Magistrate's Order quoted above is that she would release the defendant on the property and corporate surety bond but for the Administrative Order of the district court. This court has previously stated that "we would have difficulty with upholding the legality of denying or altering a property bond solely because of a stated policy against those bonds." *United States v. James*, 674 F.2d 886, 890 (11th Cir.1982). In this case, the property bond suggested by Auriemma was denied precisely because of such a stated policy. By virtue of its Administrative Order 85–19, the United States District Court for the Southern District of Florida substantially limits the effectiveness of a Congressional enactment. The constitutionality of the statute here has not been brought into question, and the concerns cited by the District Court in Administrative Order 85–19 center upon the difficulties in the administration of property bonds as an alternative method of an accused gaining release prior to trial. Administrative concerns cannot be invoked to nullify an Act of Congress; therefore, in my opinion, the Administrative Order cannot stand as promulgated.

In finding fault with the Administrative Order, I do not suggest that I would in any way limit district courts from issuing appropriate uniform administrative guidelines for use by officers and personnel of the court. As a prerequisite to granting release pursuant to paragraph (K) of § 3142(c)(2), the court may require an accused, or persons pledging property in his behalf, to furnish title insurance or other proof of title, a promissory note conditioned upon the detainee's appearance at trial, which note could assure payment of attorney fees in case of collection, an appraiser's valuation of the property, and any further guarantees that collection, in event of non-appearance, will be expeditious and not at the expense of the government. Further, the court may limit the types of property that secure a property bond to eliminate those types which deteriorate rapidly or easily disappear. Likewise, such guidelines may require inquiry into the relationship of the pledgor of the property and the accused seeking release which would implement the following suggestion in the Congressional history: "Generally such assurance will exist where there is a close relationship between the defendant and the third party, such as a family tie." *Supra* p. 1525.

For the foregoing reasons, I dissent from the majority opinion which does not squarely confront the problems created by the Administrative Order.